******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE
## *v.* JACQUELYN N. CRAWFORD ET AL.
### (SC 19903)

Palmer, McDonald, Robinson, D'Auria,
Mullins, Kahn and Ecker, Js.*

*Syllabus*

The plaintiff in error, E, who had been appointed by the trial court as the committee to conduct a foreclosure sale in the underlying foreclosure action brought by the defendant in error bank, U Co., against the defendant in error property owner, C, filed a writ of error, claiming, inter alia, that the trial court improperly denied his motion to recover fees and expenses from U Co. U Co. had sought to foreclose a mortgage on certain of C's real property. The trial court rendered judgment of foreclosure by sale, and U Co. was the successful bidder. Before the sale could be completed, C filed a bankruptcy petition under chapter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court, which automatically stayed the foreclosure proceedings pursuant to the automatic stay provision (11 U.S.C. § 362 [a] [2012]) of the code. Thereafter, pursuant to statute (§ 49-25), E filed a motion seeking to recover from U Co. the fees and expenses that he had incurred in preparing for the sale. The trial court denied E's motion for fees and expenses on the ground that, pursuant to the Appellate Court's decision in *Equity One, Inc.* v. *Shivers* (150 Conn. App. 745), the motion automatically was stayed by 11 U.S.C. § 362 (a) and the court was barred from acting on the motion during the duration of the stay. In connection with his writ of error, E claimed, inter alia, that this court should overrule *Shivers* because state courts lack jurisdiction to extend the automatic stay provision to motions for fees and expenses filed by committees for sale seeking expenses from nondebtor plaintiffs in foreclosure actions. *Held*:

1. This court could review E's writ of error because, although the trial court's order denying E's motion for fees and expenses was an interlocutory order, it constituted an appealable final judgment under the second prong of the test for determining the appealability of interlocutory orders set forth in *State* v. *Curcio* (191 Conn. 27), as the denial of the motion so substantially resolved the rights of the parties that further proceedings could not affect them: E, who was not a party to the underlying foreclosure action, had an undisputed right to recover the fees and expenses that he had incurred in preparing for the sale immediately upon the filing of a proper and timely motion, that right was separate from and collateral to the rights being asserted in the foreclosure action, and there was no possibility that his claim could be raised on direct appeal from the trial court's judgment in the foreclosure action without first being rendered moot; moreover, the claim E asserted in his writ of error, which already has arisen on numerous occasions in the courts of this state, involved a matter of public importance, as committees for sale, whice are appointed by and act as representatives of the court, may be reluctant to accept appointment if they are unable to promptly recover the fees and expenses they incur in that capacity, and allowing review of the trial court's ruling in the present case would entirely dispose of the issue presented, would not open the floodgates to additional writs of error raising the same issue, and would avoid the bizarre result of allowing *Shivers*, which is inconsistent with the majority of federal bankruptcy decisions, to continue to bind this state's trial courts.

   (*Three justices dissenting in one opinion*)

2. Although E's writ of error was rendered moot because the automatic stay terminated when, during the pendency of the writ of error, C's bankruptcy petition was dismissed, E's claim was reviewable under the capable of repetition, yet evading review exception to the mootness doctrine; because of the limited duration of chapter 13 bankruptcy proceedings, which, on average in the federal bankruptcy court in Connecticut, span approximately ten months, there existed a strong likelihood that the majority of cases challenging a denial of a motion for

committee fees and expenses would be moot before appellate litigation could be completed, the issue presented by E's writ of error, which already has arisen on numerous occasions in the courts of this state, was likely to recur, and resolution of that issue was of public importance.

3. This court having determined that a state court lacks subject matter jurisdiction to extend the automatic bankruptcy stay to proceedings against nondebtors, it overruled the Appellate Court's decision in *Shivers*, and, because the trial court relied exclusively on *Shivers* in denying E's motion for fees and expenses, this court granted E's writ of error and remanded the case to the trial court with direction to vacate the order denying E's motion and to consider the motion on the merits; Connecticut and federal case law indicated that the stay provision set forth in 11 U.S.C. § 362 (a), which operates to benefit the debtor and bankruptcy trustee only, does not apply automatically to claims against nondebtors, and that, although state courts have jurisdiction to interpret the provisions of the bankruptcy code and orders of the bankruptcy court to determine whether, under their plain terms, the automatic stay provision applies in a state court proceeding, the bankruptcy court has exclusive jurisdiction to modify a stay by extending it to proceedings to which it does not automatically apply or by barring it in proceedings to which it does automatically apply, and, therefore, a state court lacks jurisdiction to extend the automatic stay provision to the motion of a committee for sale to recover fees and expenses from a nondebtor.

Submitted on briefs April 2, 2018—officially released November 26, 2019

*Procedural History*

Writ of error from the decision of the Superior Court in the judicial district of Hartford, *Robaina, J.*, denying the motion to award interim foreclosure committee fees and expenses filed by the plaintiff in error. *Writ of error granted*; *remanded with direction.*

*C. Donald Neville* and *Gregory W. Piecuch* filed a brief for the plaintiff in error (Douglas M. Evans).

*Robert A. White, Proloy K. Das, Sarah Gruber, Irve Goldman, Thomas J. Sansone* and *Charles A. Maglieri* filed a brief for the Connecticut Bar Association as amicus curiae.

*Opinion*

ROBINSON, J. The primary issue raised by this writ of error is whether the automatic stay provision of the federal bankruptcy code, 11 U.S.C. § 362 (a) (1),[1] precludes a committee for sale from recovering fees and expenses from a plaintiff in a foreclosure action that has been stayed because the defendant has filed for bankruptcy. The plaintiff, the U.S. Bank National Association, brought the underlying foreclosure action against the defendant Jacquelyn N. Crawford.[2] The trial court ultimately ordered a foreclosure by sale and appointed the plaintiff in error, Douglas M. Evans, as the committee for sale. Before the sale could be completed, however, Crawford declared bankruptcy, and the foreclosure action was stayed pursuant to 11 U.S.C. § 362 (a) (1). Thereafter, the plaintiff in error filed a motion pursuant to General Statutes § 49-25,[3] seeking to recover, from the bank, the fees and expenses that he had incurred in preparing for the sale. Relying on an Appellate Court decision; see *Equity One, Inc.* v. *Shivers*, 150 Conn. App. 745, 755, 93 A.3d 1167 (2014) (when defendant in foreclosure action has declared bankruptcy, automatic stay provision applies to motions for fees and expenses by committee for sale against nondebtor plaintiff); the trial court concluded that the plaintiff in error's motion for fees and expenses was stayed and issued an order denying the motion on that ground. This writ of error was then filed pursuant to General Statutes § 51-199 (b) (10)[4] and Practice Book § 72-1.[5] Specifically, the plaintiff in error contends that this court should overrule *Shivers* because the Appellate Court lacked subject matter jurisdiction to extend the automatic stay provision to motions to recover fees and expenses from nondebtor plaintiffs in foreclosure actions. In the alternative, the plaintiff in error contends that we should overrule *Shivers* on the merits because it is in conflict with the decisions of federal bankruptcy courts addressing this issue. We conclude that state courts lack jurisdiction to extend the automatic stay provision to proceedings against nondebtors and that *Shivers* must be overruled on that ground. Accordingly, we grant the writ of error and remand the case to the trial court with direction to vacate the order denying the plaintiff in error's motion for fees and expenses and to entertain the motion.

The record reveals the following undisputed facts and procedural history. Crawford executed a promissory note in favor of the bank that was secured by a mortgage on property located at 36-38 Baltic Street in the city of Hartford. After Crawford defaulted on the note, the bank commenced a foreclosure action against her. The trial court ultimately rendered a judgment of foreclosure by sale and appointed the plaintiff in error as the committee for sale. The sale was scheduled for February 4, 2017, and the bank was the successful bid-

der. Shortly thereafter, the plaintiff in error filed his report, in which he listed expenses totaling $2419.29. He also submitted an affidavit in which he averred that the legal fees incurred in connection with the sale were expected to be $3420.

Before the sale could be completed, however, Crawford filed for bankruptcy pursuant to chapter 13 of the United States Bankruptcy Code. Because the automatic stay provision applied to the foreclosure action, the sale of the property could not be completed. Accordingly, the plaintiff in error filed a motion to recover his fees and expenses from the bank pursuant to § 49-25. See footnote 3 of this opinion. The plaintiff in error contended in the motion that the trial court should not follow the Appellate Court's decision in *Equity One, Inc.* v. *Shivers*, supra, 150 Conn. App. 755, holding that the bankruptcy stay provision applies to such motions because it was in conflict with the decisions of several federal courts. The trial court concluded that it was bound by *Shivers* and denied the plaintiff in error's motion solely on that ground.

In the present case, the plaintiff in error contends that this court should overrule *Shivers* on two alternative grounds. First, he contends that the Appellate Court in *Shivers* lacked jurisdiction to extend the automatic stay provision to motions by committees for sale to recover fees and expenses from nondebtors. Second, the plaintiff in error contends that, if we conclude that the Appellate Court had such jurisdiction in *Shivers*, that court incorrectly concluded that the automatic stay provision should be extended to such motions. After the writ of error was filed, this court, sua sponte, ordered the parties to address in their appellate briefs the following two issues: (1) whether the plaintiff in error is aggrieved by a final judgment of the Superior Court such that he has standing to bring the writ of error, and (2) whether the controversy will be rendered moot if the bankruptcy stay terminates during the pendency of the writ of error. We note that the automatic stay terminated on July 27, 2017. The bank has filed no appellate brief.[6]

We conclude that the plaintiff in error has standing to bring the writ of error. We further conclude that, although his claim is moot, it is nonetheless reviewable under the capable of repetition, yet evading review exception to the mootness doctrine. Addressing the merits of the plaintiff in error's claim, we conclude that state courts lack jurisdiction to extend the automatic stay provision to motions by committees for sale to recover fees and expenses from nondebtor foreclosure plaintiffs and, therefore, that *Shivers* must be overruled.

I

Because it implicates this court's subject matter jurisdiction, we first address the issue of whether the plaintiff in error is aggrieved by a final judgment and, there-

fore, has standing to bring this writ of error. See *State v. Curcio*, 191 Conn. 27, 30, 463 A.2d 566 (1983) ("[b]ecause our jurisdiction over appeals . . . is prescribed by statute, we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim"). The plaintiff in error contends that, because his motion seeking payment by the bank of his fees and expenses was essentially a separate third-party claim, and because it was denied in full, the order denying the motion is not interlocutory in nature but, rather, constitutes an appealable final judgment. We disagree. Although the trial court denied the motion, it is clear that the denial was without prejudice to the plaintiff in error's right to renew the motion after the automatic stay terminated. See *Equity One, Inc.* v. *Shivers*, supra, 150 Conn. App. 755 and n.6 (although order granting committee for sale's motion for fees was void because automatic stay was in place when order was issued, because stay had since terminated, parties could "revisit the question of payment for committee fees on remand"). Accordingly, we conclude that that order is interlocutory.

The plaintiff in error also claims, however, that, if the trial court's order denying his motion for fees and expenses is interlocutory, it is reviewable under *State v. Curcio*, supra, 191 Conn. 31. In that case, we stated that, "[i]n both criminal and civil cases . . . we have determined certain interlocutory orders and rulings of the Superior Court to be final judgments for purposes of appeal. An otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." Id.

We acknowledge at the outset of our analysis that this court's *Curcio* jurisprudence is hardly a model of clarity or consistency. We further acknowledge that, as a result of this doctrinal confusion, it is possible to identify both cases that provide support for the conclusion that the trial court's denial of the plaintiff in error's motion for fees and expenses is immediately reviewable under *Curcio* and cases that arguably undermine that conclusion. For the following reasons, however, we ultimately are persuaded that the trial court's denial of the motion for fees and expenses is immediately reviewable under the second prong of *Curcio*.

First, immediate review of the trial court's ruling will in no way offend the primary public policy considerations that underlie the final judgment rule. We previously have recognized that the rule's primary policy rationale is "to discourage piecemeal appeals and to facilitate the speedy and orderly disposition of cases at the trial court level." (Internal quotation marks omitted.) *Mazurek* v. *Great American Ins. Co.*, 284 Conn.

16, 33, 930 A.2d 682 (2007). In the present case, reviewing the denial of the motion for fees and expenses will have no adverse effect on the speedy and orderly disposition of the underlying foreclosure action because the plaintiff in error is not a party to that action and the issue that he raises in this writ of error implicates a right that is separable from, and collateral to, the rights being asserted in the foreclosure action. See *Melia* v. *Hartford Fire Ins. Co.*, 202 Conn. 252, 256, 520 A.2d 605 (1987) (observing with approval that, under federal law, review of interlocutory orders is available for claims involving a "right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated" [internal quotation marks omitted]); see also *Niro* v. *Niro*, 314 Conn. 62, 71–72, 100 A.3d 801 (2014) (distinguishing situation in which order was reviewable under *Curcio* because plaintiff in error was not involved in, and challenged order was not intertwined with, underlying litigation, from situation in which *Curcio* did not apply because plaintiff in error was party to, and challenged order was intertwined with, underlying litigation).

Moreover, the policy of discouraging piecemeal appeals carries little weight under the circumstances present in this case, in which there is *no possibility* that the plaintiff in error's claim could be raised in a direct appeal from the judgment in the foreclosure action. See *Lougee* v. *Grinnell*, 216 Conn. 483, 487, 582 A.2d 456 (1990) (interlocutory ruling was reviewable when underlying proceeding would not result in later judgment from which appellant could appeal). Rather, if we decline to review the trial court's denial of the plaintiff in error's motion for fees and expenses under *Curcio*, the issue of whether the Appellate Court's decision in *Equity One, Inc.* v. *Shivers*, supra, 150 Conn. App. 755, holding that the bankruptcy stay provision applies to such motions—which was the sole basis for the trial court's ruling—may *forever* evade appellate review. This is so because, if a committee for sale is required to wait until the stay is lifted and the motion for fees and expenses is granted to challenge the initial denial of the motion pursuant to *Shivers*, the claim will be moot, and the committee for sale will no longer be aggrieved. Accordingly, this court would lack jurisdiction to entertain the plaintiff in error's claim. See, e.g., *Soracco* v. *Williams Scotsman, Inc.*, 292 Conn. 86, 91, 971 A.2d 1 (2009) ("[i]f a party is found to lack [aggrievement], the court is without subject matter jurisdiction to determine the cause" [internal quotation marks omitted]); *Bornemann* v. *Connecticut Siting Council*, 287 Conn. 177, 181, 947 A.2d 302 (2008) ("it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical

relief can follow" [internal quotation marks omitted]); see also Practice Book § 72-1 (a) ("[w]rits of error for errors in matters of law . . . may be brought [only] from a final judgment of the Superior Court to the Supreme Court in the following cases . . . a decision binding on an *aggrieved* nonparty" [emphasis added]).

The dissent suggests, however, that the initial ruling denying the motion for fees and expenses could be reviewed after the stay is lifted and the motion is granted under the capable of repetition, yet evading review exception to the mootness doctrine. We have some doubt as to whether that is the case in light of this court's suggestion in *In re Emma F.*, 315 Conn. 414, 428 n.12, 107 A.3d 947 (2015), that cases in which an appellant is no longer *aggrieved* by the judgment of the Superior Court because the judgment is no longer in effect—as distinct from cases in which the judgment is technically still in effect but intervening factual circumstances have rendered the appeal *moot* by depriving the judgment of any practical significance—are not subject to the "capable of repetition, yet evading review" exception to the mootness doctrine. See id., 428–29 n.12 ("[G]iven the trial court's vacatur of the judgment at issue . . . query whether the [appellant] is still an 'aggrieved' party, as is required by General Statutes § 52-263. If we were to hear this appeal on its merits, there does not appear anything left for us to reverse should the [appellant] prevail—even pyrrhically under the capable of repetition, yet evading review exception—insofar as the [appellant] has now received all of the relief it would have obtained by a successful appeal."). Even if we were to assume that the exception would apply, however, we still can perceive no reason why we should decline to apply an exception to the rule requiring a final judgment for appellate jurisdiction now merely because, at some later time, when the right that the plaintiff in error seeks to vindicate—namely, the right to recover his fees and expenses from the bank *while the automatic stay provision is in effect*— will be forever lost, we might be able to apply an exception to the mootness doctrine, which also implicates our appellate jurisdiction.[7]

Second, and relatedly, the trial court's ruling threatens to abrogate a right that the plaintiff in error *now* holds. See *State* v. *Longo*, 192 Conn. 85, 91, 469 A.2d 1220 (1984) (party seeking review of interlocutory order "must show that that decision threatens to abrogate a right that he or she *then* holds" [emphasis in original]).[8] There is no dispute in the present case that a committee for sale ordinarily is entitled to recover fees and expenses immediately upon filing a proper and timely motion for fees. The sole reason that the plaintiff in error's motion for fees and expenses was denied was that the trial court had ruled that, under *Shivers*, the motion was subject to the automatic stay provision. Thus, if *Shivers* was wrongly decided, the plaintiff in

error is *now* being unlawfully deprived of an existing right to reimbursement.

Third, the plaintiff in error's claim involves a question of some public importance. See, e.g., *Abreu* v. *Leone*, 291 Conn. 332, 347–48, 968 A.2d 385 (2009) (interlocutory discovery order is reviewable if case involves counterbalancing public policy factor that weighs against policies underlying final judgment rule); *Melia* v. *Hartford Fire Ins. Co.*, supra, 202 Conn. 256 (review of interlocutory orders is available for claims involving right "too important to be denied review" [internal quotation marks omitted]). "A committee [for] sale functions as an arm of the court in a judicial sale. The committee conducting a sale is an agent or representative of the court." (Internal quotation marks omitted.) *Citicorp Mortgage, Inc.* v. *Burgos*, 227 Conn. 116, 123, 629 A.2d 410 (1993). Under the Appellate Court's decision in *Shivers*, attorneys may be more reluctant to serve the courts in this capacity when, through no fault of their own, they are rendered unable to recover their fees and expenses promptly in foreclosure actions in which a defendant has declared bankruptcy, and then must either wait for an indefinite period of time until the stay terminates or seek a judgment from the bankruptcy court declaring that the stay does not bar such recovery, thereby incurring additional fees and expenses for which the committee ultimately may not be compensated.[9] We further note that this issue has arisen with some frequency in this state.[10] Accordingly, it is important to know whether the decision in *Shivers* was correct.

The dissent points out that, in *Melia*, this court stated that it "has no discretionary jurisdiction comparable to that given the federal courts by [28 U.S.C.] § 1292 (b) to entertain appeals from interlocutory orders, except as provided in General Statutes § 52-265a." *Melia* v. *Hartford Fire Ins. Co.*, supra, 202 Conn. 256. Although it is true that this court has no *statutory* authority other than § 52-265a to entertain interlocutory appeals, it does have the authority to treat appeals that are otherwise interlocutory in character as appeals from final judgments if they satisfy *Curcio*, and our reading of *Melia* satisfies us that we consider federal court decisions to be persuasive when we are considering the scope of that authority. Indeed, in *Melia*, we dismissed the defendant's interlocutory appeal pursuant to *Curcio* for the same reason the Chief Justice previously had denied the defendant's petition pursuant to § 52-265a, namely, that there were "no significant ramifications affecting the public interest or entailing injustice from delay that cannot be substantially redressed by appellate review of the final judgment after completion of the trial." Id., 257. It would appear, therefore, that, if the interlocutory appeal in *Melia had* involved a matter of significant public interest or the denial of review had entailed injustice that could not be redressed by belated appel-

late review of the final judgment, we would have taken those considerations into account under *Curcio*. To the extent that *Melia* suggests that § 52-265a provides the *exclusive* mechanism for bringing an interlocutory *appeal* that involves a substantial public interest, we note that the plaintiff in error in the present case could not have sought recourse pursuant to § 52-265a because he is not a party to the action and, therefore, could not file an appeal. See *State* v. *Gault*, 304 Conn. 330, 348, 39 A.3d 1105 (2012) ("statutory authorization to bring [an appeal pursuant to § 52-265a] is extended only to 'any party to an action' "). We conclude that, when a nonparty seeks interlocutory review of a decision pursuant to *Curcio*, and the matter satisfies the substantial public interest standard of § 52-265a and also involves a right that is separable from and collateral to the rights being asserted in the underlying action, *Curcio* is capacious enough for us to entertain the writ of error.

Fourth, unlike, for example, a broad rule that a particular *class* of interlocutory discovery rulings, such as those involving privileged communications, are immediately appealable, which would allow a myriad of appeals from many types of rulings, if we review the ruling at issue here, our decision will dispose of that issue once and for all and will not open the floodgates to additional writs of error raising the same issue. Cf. *Brown & Brown, Inc.* v. *Blumenthal*, 288 Conn. 646, 655–56 n.6, 954 A.2d 816 (2008) (declining to treat denial of motion for summary judgment as final appealable judgment because doing so "would open the floodgates to appeals brought from interlocutory orders").

Finally, we think it is significant that our appellate court system *created for itself* the predicament that it now finds itself in. It would be bizarre to conclude that, once the Appellate Court decided in *Shivers* that a committee for sale must await the lifting of the automatic stay provision to obtain payment for its fees and expenses, our trial courts became *forever* bound by that decision, even though the issue involves the interpretation of the federal bankruptcy code and most of the decisions by bankruptcy courts in this jurisdiction have disagreed with *Shivers;* see *In re Tasillo*, United States Bankruptcy Court, Docket No. 14-21683 (ASD) (D. Conn. January 6, 2015); *In re VMC Real Estate, LLC*, United States Bankruptcy Court, Docket No. 11-20452 (ASD) (D. Conn. March 9, 2012); *In re Rubenstein*, 105 B.R. 198 (Bankr. D. Conn. 1989); see also *United States Bank Assn.* v. *Barber*, Superior Court, judicial district of New Haven, Docket No. CV-13-6037544-S (May 20, 2015) (noting that "[t]he only certainty is that *Shivers* currently remains binding on trial judges in Connecticut," and expressing "sympath[y] to the plight of the committee, who, through no fault of her own, finds herself temporarily uncompensated for her labor and unreimbursed for her out-of-pocket expenses"); *United*

*States Bank Assn.* v. *Barber*, supra (recognizing that "bankruptcy judges are known as first-rate jurists [and presumably have far greater experience with technical issues of bankruptcy law]" than nonbankruptcy judges); and even though a committee for sale acts on the court's behalf. See, e.g., *Citicorp Mortgage, Inc.* v. *Burgos*, supra, 227 Conn. 123. Contrary to the dissent's contention, our conclusion that the trial court's ruling pursuant to *Shivers* is reviewable does not further "muddy our final judgment jurisprudence" but merely provides a pragmatic solution to a problem of the courts' own creation that would otherwise remain forever unresolved.

We conclude, therefore, that we may review the plaintiff in error's claim under the second prong of *Curcio*, applicable to an order that "so concludes the rights of the parties that further proceedings cannot affect them." *State* v. *Curcio*, supra, 191 Conn. 31.

## II

We next consider whether the plaintiff in error's claim is moot because the automatic stay has terminated. We conclude that the claim is moot but is reviewable under the capable of repetition, yet evading review exception to the mootness doctrine.

We begin with a review of the governing legal principles. "Mootness is a question of justiciability that must be determined as a threshold matter because it implicates this court's subject matter jurisdiction. . . . [A]n actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Citation omitted; internal quotation marks omitted.) *Wendy V.* v. *Santiago*, 319 Conn. 540, 544–45, 125 A.3d 983 (2015).

In the present case, the automatic stay terminated when Crawford's bankruptcy claim was dismissed on July 27, 2017, during the pendency of this writ of error. Because the automatic stay provision no longer bars the plaintiff in error from recovering his fees and expenses from the bank pursuant to § 49-25, our decision in this case can have no practical effect on his right to recover, and his claim that the automatic stay provision does not apply to motions for fees and expenses is, therefore, moot.[11]

An otherwise moot question, however, may qualify for appellate review under the capable of repetition, yet evading review exception to the mootness doctrine. See id., 545. To qualify for this exception, "three requirements must be met. First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likeli-

hood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot." (Internal quotation marks omitted.) Id., 545–46.

We explained in part I of this opinion that the issue raised by the plaintiff in error has some public importance and that it already has been raised in numerous cases in this state. Accordingly, it is reasonable to conclude that committees for sale who find themselves in the same position as the plaintiff in error will likely continue to raise the issue. We conclude, therefore, that the second and third prongs of the capable of repetition, yet evading review exception are met.

With respect to the first prong, the plaintiff in error has provided information showing that, in 2016, the median time interval between the filing and the closing of an individual debtor's chapter 13 bankruptcy case in the United States Bankruptcy Court for the District of Connecticut was 248 days. See U.S. Bankruptcy Courts, BAPCPA Table 3 (December 31, 2016), available at http://www.uscourts.gov/sites/default/files/data_tables/bapcpa_3_1231.2016.pdf (last visited November 18, 2019). We note that more recent statistics from the same source indicate that this interval has increased to 303 days. See U.S. Bankruptcy Courts, BAPCPA Table 3 (December 31, 2017), available at http://www.uscourts.gov/sites/default/files/data_tables/bapcpa_3_1231.2017.pdf (last visited November 18, 2019). In *Sweeney* v. *Sweeney*, 271 Conn. 193, 202–203, 856 A.2d 997 (2004), this court concluded that, when the challenged action was likely to have a duration of twenty-three months, the first prong of the capable of repetition, but evading review exception was satisfied. See id. ("the record in the present case reveals that this dissolution action was litigated vigorously by both parties, resulting in a span of twenty-three months between the commencement of the action and the final judgment of dissolution; such a time frame demonstrates the unlikelihood that appellate resolution regarding a pendente lite order entered during the course of such proceedings could be achieved before the order is superseded"). We conclude, therefore, that the average duration of an individual debtor's chapter 13 bankruptcy proceeding—303 days, or slightly less than ten months—is sufficiently limited to satisfy the first prong of the capable of repetition, yet evading review exception to the mootness doctrine.

Because we conclude that the plaintiff in error's claim

satisfies all three requirements of the capable of repetition, yet evading review exception to the mootness doctrine, the claim is reviewable.

### III

We turn, therefore, to the plaintiff in error's contention that we should overrule the decision of the Appellate Court in *Equity One, Inc.* v. *Shivers*, supra, 150 Conn. App. 755, holding that the automatic stay provision operates to bar committees for sale from recovering fees and expenses from nondebtor plaintiffs in foreclosure actions that are subject to the stay. As we indicated, the plaintiff in error contends that *Shivers* should be overruled on two alternative grounds. First, he contends that the Appellate Court in *Shivers* lacked subject matter jurisdiction to extend the automatic stay provision to motions to recover fees and expenses from nondebtor plaintiffs in mortgage foreclosure actions because the bankruptcy court has exclusive jurisdiction to determine the scope of the automatic stay. Second, he contends that, if the Appellate Court had such subject matter jurisdiction, it incorrectly determined that the automatic stay provision applied to such motions. We conclude that state courts lack subject matter jurisdiction to extend the automatic stay provision to proceedings against nondebtors and, therefore, that *Shivers* must be overruled on that ground. Accordingly, we need not consider whether *Shivers* was correct on the merits.

Whether a court has subject matter jurisdiction to entertain a claim is a question of law subject to plenary review. See, e.g., *Fort Trumbull Conservancy, LLC* v. *New London*, 282 Conn. 791, 802, 925 A.2d 292 (2007). In making our determination as to whether the courts of this state have subject matter jurisdiction to extend the automatic stay provision to proceedings against nondebtors in the present case, we do not write on a blank slate. The Appellate Court considered this issue in *Metro Bulletins Corp.* v. *Soboleski*, 30 Conn. App. 493, 496–97, 620 A.2d 1314, cert. granted, 225 Conn. 923, 625 A.2d 823 (1993) (appeal withdrawn June 4, 1993), and concluded that any request to extend the automatic stay provision to proceedings against a nondebtor must be made in bankruptcy court.[12] The Appellate Court in *Soboleski* noted that, although the automatic stay provision ordinarily ''does not enjoin litigation against nondebtors,'' there is "limited authority for extending the stay to a nondebtor in special circumstances." Id., 496; see also 11 U.S.C. § 105 (a) (2012).[13] The court also noted, however, that "the weight of the case law indicates that a nondebtor, seeking to extend the stay beyond the debtor, must move for the extension in the bankruptcy court."[14] *Metro Bulletins Corp.* v. *Soboleski*, supra, 497. The Appellate Court found this case law persuasive "because [i]t is fundamental under federal bankruptcy law that the automatic stay operates for the benefit of the debtor and trustee

only, and gives other parties interested in property affected by the automatic stay no substantive or procedural rights. . . . Only the bankruptcy court has the entire picture before it. It would be difficult, if not impossible, for a state trial court, which has only the immediate case before it, to determine the best interests of the bankruptcy estate." (Citation omitted; internal quotation marks omitted.) Id., 498. Because the defendant in *Soboleski*, a nondebtor who was seeking the protection of the automatic stay provision, had not applied for an extension of the automatic stay in the bankruptcy court, the Appellate Court concluded that the trial court properly had denied his motion for a stay. Id. Thus, although the court in *Soboleski* did not expressly conclude that the state trial court *lacked subject matter jurisdiction* to entertain the defendant's motion for a stay, it did suggest that the bankruptcy court has exclusive jurisdiction to entertain requests to extend the automatic stay to proceedings against nondebtors.

For the reasons that follow, we agree with the Appellate Court's decision in *Soboleski*. Specifically, we conclude that, although the courts of this state have jurisdiction to determine whether the automatic stay provision, by its own terms, applies to a proceeding in state court, they do not have jurisdiction to *modify* the application of the automatic stay provision pursuant to 11 U.S.C. § 105 (a) or 11 U.S.C. § 362 (d)[15] by *extending* its application to proceedings to which it does not, by its own terms, automatically apply or by *barring* its application to proceedings to which it does automatically apply.

This issue of whether state courts have jurisdiction to modify the reach of the automatic stay provision was discussed at length by the United States Circuit Court of Appeals for the Ninth Circuit in *In re Gruntz*, 202 F.3d 1074 (9th Cir. 2000). In that case, the bankruptcy debtor, Robert Gruntz, was charged in state court with the criminal offense of failing to support his dependent children. Id., 1077. After he was convicted, Gruntz filed an appeal, claiming that the criminal prosecution was barred by the automatic stay provision. See generally *People* v. *Gruntz*, 29 Cal. App. 4th 412, 35 Cal. Rptr. 2d 55 (1994). The California Court of Appeal concluded that the automatic stay did not apply to criminal prosecutions and affirmed the conviction. See id., 421. Gruntz ultimately filed an "adversary proceeding" in the bankruptcy court, requesting that that court declare the criminal proceedings void because they violated the automatic stay provision. See *In re Gruntz*, supra, 1077. The bankruptcy court dismissed the proceeding on the ground that it was collaterally estopped by the judgment of the state court that the automatic stay provision did not apply. See id. On appeal, the United States District Court concluded that the bankruptcy court was bound by the state court's judgment that the automatic stay

provision did not apply pursuant to the *Rooker-Feldman* doctrine.[16] See id., 1077–78. The defendant then appealed to the Ninth Circuit, claiming that a state court ruling on the extent of the automatic stay does not bind the bankruptcy court. Id., 1078.

The Ninth Circuit began its analysis by noting that "[t]he automatic stay is self-executing, effective upon the filing of the bankruptcy petition." Id., 1081. It further noted that "[t]he automatic stay is an injunction issuing from the authority of the bankruptcy court, and bankruptcy court orders are not subject to collateral attack in other courts. See *Celotex Corp.* [v. *Edwards*, 514 U.S. 300, 306–13, 115 S. Ct. 1493, 131 L. Ed. 2d 403 (1995)]. That is so not only because of the comprehensive jurisdiction vested in the bankruptcy courts . . . but also because persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." (Citation omitted; internal quotation marks omitted.) *In re Gruntz*, supra, 202 F.3d 1082.

The Ninth Circuit concluded that "[a]ny state court modification of the automatic stay would constitute an unauthorized infringement upon the bankruptcy court's jurisdiction to enforce the stay. While Congress has seen fit to authorize courts of the United States to restrain [state court] proceedings in some special circumstances, such as the automatic stay, it has in no way relaxed the old and [well established] judicially declared rule that state courts are completely without power to restrain [federal court] proceedings in in personam actions." (Internal quotation marks omitted.) Id.

"In sum, by virtue of the power vested in them by Congress, the federal courts have the final authority to determine the scope and applicability of the automatic stay. The [s]tates cannot, in the exercise of control over local laws and practice, vest [s]tate courts with power to violate the supreme law of the land. . . . Thus, the *Rooker-Feldman* doctrine is not implicated by collateral challenges to the automatic stay in bankruptcy. A bankruptcy court simply does not conduct an improper appellate review of a state court when it enforces an automatic stay that issues from its own federal statutory authority. In fact, a reverse *Rooker-Feldman* situation is presented when state courts decide to proceed in derogation of the stay, because it is the state court which is attempting impermissibly to modify the federal court's injunction." (Citation omitted; footnotes omitted; internal quotation marks omitted.) Id., 1083; see also id., 1084 ("modifying the automatic stay is not the act of a state court merely interpreting federal law; it is an intervention in the operation of an ongoing federal bankruptcy case, the administration of which is vested exclusively in the bankruptcy court").[17] The Ninth Circuit ultimately concluded, however, that, because crimi-

nal proceedings against a debtor are expressly excepted from the automatic stay provision pursuant to 11 U.S.C. § 362 (b) (1), no modification of the stay was required for California to prosecute Gruntz, and, therefore, there was no need for the California court to seek the approval of the bankruptcy court before allowing the prosecution to go forward. Id., 1087.

We recognize that some cases addressing this issue may be interpreted as holding that, although the federal bankruptcy courts have the *final* say on whether the automatic stay provision should be modified, they do not have *exclusive jurisdiction* to make that determination. Rather, the state court may make that determination in the first instance, subject to later review by the bankruptcy court. See *Lockyer* v. *Mirant Corp.*, 398 F.3d 1098, 1106 (9th Cir. 2005) (state courts "have the power to decide whether the automatic stay applies to its proceedings," but if bankruptcy court "later decides that the state court was incorrect, the state court proceedings in violation of the stay are void"); *Chao* v. *Hospital Staffing Services, Inc.*, 270 F.3d 374, 384 (6th Cir. 2001) ("[i]f . . . the suit before the [nonbankruptcy] court may proceed because an exception to the automatic stay authorizes prosecution of the suit, [that] court may enter needful orders not themselves inconsistent with the automatic stay," but if nonbankruptcy court's determination is erroneous, bankruptcy court can later declare entire action void). We think the better interpretation of these cases, however, is that a state court has jurisdiction to determine whether, under its plain terms, the automatic stay provision applies to the proceeding before it, not that the court has jurisdiction pursuant to 11 U.S.C. § 105 (a) or 11 U.S.C. § 362 (d) to modify the automatic stay. Indeed, in both *Lockyer* and *Chao*, the issue before the court was whether the proceeding before the nonbankruptcy court came within the statutory exception to the automatic stay provision for proceedings to enforce the government's "police or regulatory power" under 11 U.S.C. § 362 (b) (4); *Lockyer* v. *Mirant Corp.*, supra, 1107; *Chao* v. *Hospital Staffing Services, Inc.*, supra, 385; not whether the court should extend the application of the automatic stay or bar its enforcement pursuant to 11 U.S.C. § 105 (a) or 11 U.S.C. § 362 (d).

We conclude, therefore, that, although state courts have jurisdiction to interpret the provisions of the bankruptcy code and orders of the bankruptcy court to determine whether, under their plain terms, the automatic stay provision applies to a state court proceeding— which interpretations are subject to correction by the bankruptcy court—state courts do not have jurisdiction to change the status quo by modifying the reach of the automatic stay provision either by extending the stay to proceedings to which it does not automatically apply or by granting relief from the stay in proceedings to which it does automatically apply. Rather, any modifica-

tion of the stay must be sought in bankruptcy court.

In *Equity One, Inc.* v. *Shivers*, supra, 150 Conn. App. 745, the Appellate Court noted that "[c]ourts have extended the application of the automatic stay to nondebtors in unusual circumstances where doing so would further the purpose behind the stay." Id., 753. The court ultimately concluded that such unusual circumstances existed because the bankrupt defendant would be required to indemnify the nondebtor bank for any payments that the bank made to the committee for sale. Id., 754–55. In each case cited by the Appellate Court to support its conclusion, however, the court had implicitly recognized that the stay provision did not apply automatically to claims against nondebtors. See id., 753–54.[18] Indeed, several courts have expressly held to that effect. See, e.g., *Rhode Island Hospital Trust National Bank* v. *Dube*, 136 F.R.D. 37, 39 (D.R.I. 1990) (automatic stay provision "does not apply automatically . . . to actions against a debtor's principals, partners, officers, employees, guarantors, or sureties" [internal quotation marks omitted]); *In re Richard B. Vance & Co.*, 289 B.R. 692, 697 (Bankr. C.D. Ill. 2003) ("extension of the stay to nonbankrupt parties is not automatic and must be requested affirmatively by the debtor"); *In re Bidermann Industries U.S.A., Inc.*, 200 B.R. 779, 782 (Bankr. S.D.N.Y. 1996) (automatic stay provision "does not apply automatically to stay actions against [nondebtors]"); *In re All Seasons Resorts, Inc.*, 79 B.R. 901, 904 (Bankr. C.D. Cal. 1987) ("the automatic stay does not *automatically* encompass [codefendants]" [emphasis in original]); *Alvarez* v. *Bateson*, 176 Md. App. 136, 148, 932 A.2d 815 (2007) (automatic stay provision "applies automatically to debtors, but not to [nonbankrupt codefendants]"). We agree with these courts. When the stay provision does not apply automatically to a proceeding, action by the bankruptcy court is required to extend the application of the stay. See *In re Richard B. Vance & Co.*, supra, 697 (extension of stay to nonbankrupt parties "must be requested affirmatively by the debtor"); *In re Bidermann Industries U.S.A., Inc.*, supra, 782 (to stay action against nondebtor, "[t]he debtor must obtain a stay order from the bankruptcy court"); *In re All Seasons Resorts, Inc.*, supra, 903 (extension of automatic stay provision to nondebtors "requires the filing of an appropriate adversary proceeding under [11 U.S.C. § 105 (a) and 11 U.S.C. § 362 (d)] to achieve the desired result"); *W.W. Gay Mechanical Contractor, Inc.* v. *Wharfside Two, Ltd.*, 545 So. 2d 1348, 1350 (Fla. 1989) (nondebtor codefendant "must apply to and obtain [stay] from the bankruptcy court"); *Alvarez* v. *Bateson*, supra, 148 ("[A] court must make a determination as to whether the automatic stay extends to cover a [nonbankrupt] codefendant of the debtor. It follows that each determination should be made by the bankruptcy court supervising the debtor's estate upon request of the debtor, because it is the

debtor's interests that are being protected by the stay."). As we explained, the bankruptcy court has *exclusive* jurisdiction to extend the stay to proceedings to which it does not automatically apply. We conclude, therefore, that the Appellate Court in *Shivers* lacked jurisdiction to extend the stay provision to motions to recover a committee for sale's fees and expenses from a non-debtor bank. Accordingly, we conclude that *Shivers* must be overruled.

In the present case, the trial court relied exclusively on *Shivers* when it denied the plaintiff in error's motion for fees and expenses. We conclude, therefore, that the case must be remanded to the trial court so that it may vacate the order denying the plaintiff in error's motion and entertain that motion on the merits.

The writ of error is granted and the case is remanded with direction to vacate the order denying the plaintiff in error's motion for fees and expenses, and to conduct further proceedings according to law.

In this opinion PALMER, D'AURIA and ECKER, Js., concurred.

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

This case was originally argued before a panel of this court consisting of Justices Palmer, McDonald, Robinson, D'Auria, Mullins and Kahn. Thereafter, Justice Ecker was added to the panel and has read the briefs and appendices, and listened to a recording of the oral argument prior to participating in this decision.

[1] Title 11 of the 2012 edition of the United States Code, § 362 (a), provides in relevant part that a bankruptcy petition "operates as a stay, applicable to all entities, of . . . (1) the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . ."

[2] We note that these parties in the underlying foreclosure action are defendants in error in the present proceeding. For the sake of simplicity, we refer to U.S. Bank National Association as the bank and to Crawford by name. We also note that, although the city of Hartford, the Department of Social Services, and the United States Secretary of Housing and Urban Development were also named as defendants in the underlying foreclosure action, they are not involved in the present proceeding.

[3] General Statutes § 49-25 provides in relevant part: "[I]f for any reason the sale does not take place, the expense of the sale and appraisal or appraisals shall be paid by the plaintiff and be taxed with the costs of the case. . . ."

[4] General Statutes § 51-199 (b) provides in relevant part: "The following matters shall be taken directly to the Supreme Court . . . (10) writs of error . . . ."

[5] Practice Book § 72-1 provides in relevant part: "(a) Writs of error for errors in matters of law only may be brought from a final judgment of the Superior Court to the Supreme Court in the following cases: (1) a decision binding on an aggrieved nonparty . . . ."

[6] This court also, sua sponte, invited the Litigation Section and the Commercial Law and Bankruptcy Section of the Connecticut Bar Association to file an amicus curiae brief addressing the following question: "Should this court overrule *Equity One, Inc.* v. *Shivers*, [supra, 150 Conn. App. 745], insofar as that case required the trial court to deny the committee's motion for an interim award of fees and expenses during the automatic bankruptcy stay?" The Commercial Law and Bankruptcy Section, acting on behalf of the Connecticut Bar Association as a whole, accepted our invitation and submitted an amicus curiae brief in support of the plaintiff in error's position that this court should overrule *Shivers*. We thank the Commercial Law and Bankruptcy Section for its comprehensive brief.

[7] The dissent also suggests that the plaintiff in error could have filed a declaratory judgment action in state court to obtain the relief that he seeks. As the dissent recognizes, however, the plaintiff in error could not have brought such an action after the trial court ruled on his motion for fees and expenses in the present case because a party may not bring an action in the Superior Court effectively asking that court to review a ruling of another trial court in another case. See *Valvo* v. *Freedom of Information Commission*, 294 Conn. 534, 543–44, 985 A.2d 1052 (2010) ("[o]ur jurisprudence concerning the trial court's authority to overturn or to modify a ruling in a particular case assumes, as a proposition so basic that it requires no citation of authority, that any such action will be taken only by the trial court with continuing jurisdiction over the case, and that the only court with continuing jurisdiction is the court that originally rendered the ruling"). With respect to the dissent's contention that the plaintiff in error could have brought such an action *before* filing his motion for fees and expenses, we are aware of no authority for the proposition that a court may issue an advisory, declaratory ruling on an issue that will arise in ongoing litigation in another case. In our view, the question of whether a committee for sale is entitled to immediate payment properly can be entertained only by the trial court in which such payment can be sought, which is the court in which the foreclosure action is pending. In any event, we fail to see how requiring the plaintiff in error to jump through these procedural hoops would be preferable as a matter of judicial policy to entertaining the writ of error in the present case.

[8] Again, we acknowledge that it is difficult to discern a clear and consistent pattern in this court's application of this principle. Compare *State* v. *Longo*, supra, 192 Conn. 91 ("[W]here a defendant plausibly demonstrates that a trial court order threatens his or her double jeopardy right not to be tried twice for the same offense, the appeal is within our jurisdiction. *State* v. *Moeller*, 178 Conn. 67, 420 A.2d 1153, cert. denied, 444 U.S. 950, 100 S. Ct. 423, 62 L. Ed. 2d 320 [1979]. That order is appealable because, at the time of the appeal, the defendant already has an unqualified right to be free from double jeopardy."), with *Melia* v. *Hartford Fire Ins. Co.*, supra, 202 Conn. 257 ("It is true that a remand for a new trial resulting from an erroneous order to disclose information protected by the [attorney-client] privilege cannot wholly undo the consequences of its violation . . . . Vindication at the appellate level can seldom regain all that has been lost by an erroneous determination of a cause in the trial court." [Internal quotation marks omitted.]); see also *State* v. *Longo*, supra, 92–93 (ruling denying youthful offender status is not reviewable under *Curcio* even though denial may deprive defendant irretrievably of right to privacy conferred by youthful offender statute); *State* v. *Longo*, supra, 98 (*Healy, J.*, dissenting) (court's "focal concern for irreparable harm in the final judgment rule is indeed lessened by today's ruling"). It is hard to understand why the constitutional right to be free from double jeopardy is any more "unqualified" at the time of an interlocutory appeal than the common-law right to invoke the attorney-client privilege against disclosure (assuming that the communications at issue are, in fact, privileged) or the statutory right to youthful offender status (assuming that the defendant does, in fact, satisfy the criteria for such status). We recognize that, in *Longo*, the court emphasized that, unlike the right to double jeopardy protection, defendants were, at that time, required to apply for youthful offender status pursuant to General Statutes (Rev. to 1983) § 54-76c, and the granting of the application was within the discretion of the trial court. See *State* v. *Longo*, supra, 92. Discretion can be abused, however, and, when it is, an *existing right* is violated. Cf. *Giaimo* v. *New Haven*, 257 Conn. 481, 509, 778 A.2d 33 (2001) (applicant for statutory benefit "has a protected property interest in the benefit when, under the governing statute, the decision-making body would have no discretion to deny the application if the applicant could establish at a hearing that it met the statutory criteria"). It would appear, therefore, that the real driving force in these cases is this court's judgment regarding the *importance* of the right at issue, not the ontological status of the right at the time the appeal is filed. See, e.g., *Melia* v. *Hartford Fire Ins. Co.*, supra, 256 (review of interlocutory orders is available for claims involving right "too important to be denied review" [internal quotation marks omitted]). In any event, in the present case, *all* of the relevant considerations weigh in favor of immediate review, including the public importance of the right that the plaintiff in error is attempting to vindicate.

[9] Indeed, this is precisely what happened in *CT Tax Liens 2, LLC* v. *Tasillo*, Superior Court, judicial district of Hartford, Docket No. CV-12-

6035369-S (October 1, 2014). After the trial court in that case denied the committee for sale's motion for fees and expenses on the ground that the motion was subject to the automatic stay, the committee filed a motion in the bankruptcy court seeking a declaratory judgment that the automatic stay did not apply. See *In re Tasillo*, United States Bankruptcy Court, Docket No. 14-21683 (ASD) (D. Conn. January 6, 2015). The bankruptcy court agreed with the committee and rendered a judgment declaring that the automatic stay did not bar the committee from seeking fees and expenses from the nondebtor plaintiff. Id. The committee then returned to the Superior Court and renewed its motion for fees and expenses, seeking an additional $1000 in attorney's fees and a filing fee of $176 in connection with the bankruptcy court proceeding. See *CT Tax Liens 2, LLC* v. *Tasillo*, Superior Court, judicial district of Hartford, Docket No. CV-12-6035369-S (January 29, 2015). The trial court granted the motion in part but denied the fees and expenses associated with the bankruptcy court proceeding. Id.

We note that the decision of a federal bankruptcy court in a particular case is not binding on our trial courts in other cases. Thus, as the dissent recognizes, if we do not review the plaintiff in error's claim, our trial courts will continue to be bound by the Appellate Court's decision in *Shivers*, despite our shared "concern about the viability of *Shivers* going forward" in light of *Tasillo*.

[10] See, e.g., *In re Hooker*, United States Bankruptcy Court, Docket No. 18-20504 (JJT) (D. Conn. June 27, 2018); *In re Tasillo*, United States Bankruptcy Court, Docket No. 14-21683 (ASD) (D. Conn. January 6, 2015); *In re VMC Real Estate, LLC*, United States Bankruptcy Court, Docket No. 11-20452 (ASD) (D. Conn. March 9, 2012); *In re Rubenstein*, 105 B.R. 198, 201–204 (Bankr. D. Conn. 1989); *Equity One, Inc.* v. *Shivers*, supra, 150 Conn. App. 749–56; *HSBC Bank USA, N.A.* v. *Schmidt*, Superior Court, judicial district of New Britain, Docket No. CV-14-6024891-S (February 25, 2016); *United States Bank Assn.* v. *Barber*, Superior Court, judicial district of New Haven, Docket No. CV-13-6037544-S (May 20, 2015); *Citimortgage, Inc.* v. *Sheehan*, Superior Court, judicial district of New Haven, Docket No. CV-08-5020865-S (February 27, 2015); *CT Tax Liens 2, LLC* v. *Tasillo*, Superior Court, judicial district of Hartford, Docket No. CV-12-6035369-S (October 1, 2014); *Citimortgage, Inc.* v. *Hilton*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV-14-6015156-S (August 25, 2014).

[11] The plaintiff in error has not renewed his motion to recover the fees and expenses that he sought in his original motion for fees and expenses. Accordingly, the trial court's ruling on that motion is still in effect, and the plaintiff in error is still technically aggrieved. See footnote 5 of this opinion.

[12] We note that the court in *Equity One, Inc.* v. *Shivers*, supra, 150 Conn. App. 745, did not cite the decision in *Soboleski*.

[13] Title 11 of the 2012 edition of the United States Code, § 105 (a), provides: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

[14] The Appellate Court followed this proposition with citations to several cases. *Metro Bulletins Corp.* v. *Soboleski*, supra, 30 Conn. App. 497; see *Ingersoll-Rand Financial Corp.* v. *Miller Mining Co.*, 817 F.2d 1424, 1427 (9th Cir. 1987) (although bankruptcy court may lift stay upon request of party pursuant to 11 U.S.C. § 362 [d], stay was in effect because bankruptcy court had ordered no such relief and no statutory exception to stay provision applied); *Federal Land Bank of Spokane* v. *Stiles*, 700 F. Supp. 1060, 1063 (D. Mont. 1988) ("[a]lthough 11 U.S.C. § 105 [a] has been held to authorize a stay order as to a [codefendant]," no stay was in effect because bankruptcy court had not ordered one); *B & B Associates* v. *Fonner*, 700 F. Supp. 7, 9 (S.D.N.Y. 1988) ("[a]lthough a [b]ankruptcy [c]ourt may extend the protection of an automatic stay to a [nondebtor] in some circumstances," no stay was in effect because bankruptcy court had not ordered one); see also *Rhode Island Hospital Trust National Bank* v. *Dube*, 136 F.R.D. 37, 39 (D.R.I. 1990); *In re Codfish Corp.*, 97 B.R. 132, 135 (Bankr. D.P.R. 1988); *In re All Seasons Resorts, Inc.*, 79 B.R. 901, 903 (Bankr. C.D. Cal. 1987); *In re MacDonald/Associates, Inc.*, 54 B.R. 865, 867 (Bankr. D.R.I. 1985); *In re Precision Colors, Inc.*, 36 B.R. 429, 431 (Bankr. S.D. Ohio 1984); *W.W. Gay Mechanical Contractor, Inc.* v. *Wharfside Two, Ltd.*, 545 So. 2d 1348, 1350 (Fla. 1989); *Collier* v. *Eagle-Picher Industries, Inc.*, 86 Md. App. 38, 48, 585 A.2d 256, cert. denied sub nom. *Corhart Refractories Co.* v. *Collier*, 323 Md.

33, 591 A.2d 249 (1991).

We note that most of these cases do not directly support the Appellate Court's conclusion in *Soboleski* that a motion to extend the automatic stay provision to a proceeding against a nondebtor must be brought in bankruptcy court. In *Collier* v. *Eagle-Picher Industries, Inc.*, supra, 86 Md. App. 49–50, the state court's jurisdiction to extend the stay was not directly at issue, and the court appears to have assumed that it had such jurisdiction, although it ultimately considered and denied a nondebtor's motion for a stay. In *In re Codfish Corp.*, supra, 97 B.R. 135, *In re All Seasons Resorts, Inc.*, supra, 79 B.R. 903, *In re MacDonald/Associates, Inc.*, supra, 54 B.R. 867–68, and *In re Precision Colors, Inc.*, supra, 36 B.R. 431, the respective bankruptcy courts held only that they had jurisdiction to extend the stay to a proceeding against a nondebtor pursuant to 11 U.S.C. § 105 (a), not that state courts lacked such jurisdiction. In *Rhode Island Hospital Trust National Bank* v. *Dube*, supra, 136 F.R.D. 39, the court held only that the automatic stay provision does not apply automatically to nondebtors, and did not address the issue of whether it had jurisdiction to extend the stay.

[15] Title 11 of the 2012 edition of the United States Code, § 362 (d), provides in relevant part: "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay . . . ."

[16] "[This] doctrine takes its name from *Rooker* v. *Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923), and *District of Columbia Court of Appeals* v. *Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983). *Rooker* held that federal statutory jurisdiction over direct appeals from state courts lies exclusively in the Supreme Court and is beyond the original jurisdiction of federal district courts. See [*Rooker* v. *Fidelity Trust Co.*, supra, 415–16]. *Feldman* held that this jurisdictional bar extends to particular claims that are 'inextricably intertwined' with those a state court has already decided. See [*District of Columbia Court of Appeals* v. *Feldman*, supra, 486–87]." *In re Gruntz*, supra, 202 F.3d 1078 n.1.

[17] See also *In re Raboin*, 135 B.R. 682, 684 (Bankr. D. Kan. 1991) ("this court has exclusive jurisdiction to determine the extent and effect of the stay, and the state court's ruling to the contrary does not bar the debtor's present motion"); *In re Sermersheim*, 97 B.R. 885, 888 (Bankr. N.D. Ohio 1989) ("[i]t is the bankruptcy court *alone* that has the exclusive jurisdiction to determine questions involving the automatic stay" [emphasis in original; internal quotation marks omitted]).

[18] See *Queenie, Ltd.* v. *Nygard International*, 321 F.3d 282, 287 (2d Cir. 2003) ("[t]he automatic stay can apply to [nondebtors], but normally does so only when a claim against the [nondebtor] will have an immediate adverse economic consequence for the debtor's estate"); *A.H. Robins Co.* v. *Piccinin*, 788 F.2d 994, 999 (4th Cir.) ("there are cases . . . [in which] a bankruptcy court may properly stay the proceedings against [nonbankrupt codefendants] but . . . in order for relief for such [nonbankrupt] defendants to be available . . . there must be unusual circumstances and certainly [s]omething more than the mere fact that one of the parties to the lawsuit has filed a [c]hapter 11 bankruptcy must be shown in order that proceedings be stayed against [nonbankrupt] parties" [internal quotation marks omitted]), cert. denied, 479 U.S. 876, 107 S. Ct. 251, 93 L. Ed. 2d 177 (1986); *In re Jefferson County*, 491 B.R. 277, 284 (Bankr. N.D. Ala. 2013) ("[g]enerally, the automatic stay . . . applies only to certain actions taken or not taken with respect to a debtor, and not with respect to such action or inaction affecting other parties"); *In re North Star Contracting Corp.*, 125 B.R. 368, 370 (S.D.N.Y 1991) (automatic "stay generally applies only to bar proceedings against the debtor"); *In re Metal Center*, 31 B.R. 458, 462 (Bankr. D. Conn. 1983) ("[g]enerally, the automatic stay does not apply to proceedings against nondebtors").